UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**CHARLES McMANUS,**

        **Plaintiff,**

    v.                                   **CIVIL ACTION NO.: 2:05cv117**

**GARY BASS and**
**DUNCAN MILLS,**

        **Defendants.**

## ORDER AND OPINION

Charles McManus ("Plaintiff"), a Virginia inmate, brings this pro se action pursuant to 42 U.S.C. § 1983, against Gary Bass and Duncan Mills ("Defendants"),[1] to redress alleged violations of his rights under the Religious Land Use and Institutionalized Person's Act ("RLUIPA"), 42 U.S.C. § 2000cc et seq., and under the Free Exercise Clause of the First Amendment. Specifically, Plaintiff claims that he has been denied a kosher diet as required by his religious faith. For these violations, Plaintiff seeks monetary damages and an injunction requiring that he be placed on a kosher diet. This matter is before the Court on Defendants' and Plaintiff's cross Motions for Summary Judgment, both filed on July 6, 2005.

For the reasons set forth below, Defendants' Motion for Summary Judgment on the issue of monetary damages is **GRANTED** because Defendants have established a defense of good

---

[1] A person seeking relief under § 1983 must show that a person acting under color of state law deprived him of a constitutional right. As employees of Powhatan Correctional Center, Defendants are considered "persons" under the statute and acted under color of state law.

faith qualified immunity, Plaintiff's Motion for Summary Judgement on the issue of monetary damages is **DENIED**, and Defendants' and Plaintiff's Motions for Summary Judgment on the issue of injunctive relief are **DENIED**.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The regular prison menu offered by the Virginia Department of Corrections ("VDOC") does not provide meals which meet the strict standards of a kosher diet. In 1995, while housed at the Greenville Correctional Center, Plaintiff requested to be placed on a special kosher diet, citing his adherence to the Jewish faith. See Complaint; Affidavit of L. B. Cei, Ph. D. at ¶ 4 [hereinafter "Cei Aff."]. On September 26, 1995, the Institutional Classification Authority[2] ("ICA") reviewed and approved the request, noting that the diet was only offered at that time at the Buckingham Correctional Center ("Buckingham") and that there was a substantial waiting list to be transferred there. Id. at ¶ 4., Enclosure A. On August 30, 1996, Plaintiff was transferred to Buckingham and placed on a kosher diet. Id. at ¶ 5.

At Buckingham, the procedure for evaluating religious dietary requests was governed by Institutional Operating Procedure ("IOP") 850. Id., Enclosure B. IOP 850 provides that an inmate may be removed from the kosher diet if he or she fails to pick up 50 percent of the kosher meals during a seven day period. Id., Enclosure B at 7. The inmate is given a hearing prior to removal from the diet; but once removed, the inmate cannot reply. Id. at ¶ 9. In 1997, it was determined that Plaintiff failed to pick up 50 percent of his meals between May 28, 1997 and June 4, 1997. Id. at ¶ 6, Enclosure C. On July 28, 1997, the ICA reviewed his special diet status and recommended that he be permanently removed from the kosher diet based upon the violation and transferred to another institution. Id. L. B. Cei ("Mr. Cei"), a member of the Programs Section for VDOC, made the final decision to remove Plaintiff from the diet. On November 12,

---

[2] The ICA was known as the "Institutional Classification Committee" at that time. Cei Aff. at ¶ 4.

1997, Plaintiff was transferred to the Keen Mountain Correctional Center.

On March 26, 2002, Plaintiff was transferred to Powhatan Correctional Center ("Powhatan"). At that time, the kosher diet had been phased out at Buckingham and VDOC now provides the "Common Fare" diet, which is a kosher diet that accommodates inmates whose religious dietary needs are not met by the regular menu. Id. at ¶ 4, 6, Enclosure E. According to an affidavit submitted by Raymond L. Wood [hereinafter "Wood Aff."], VDOC Director of Food Services, the daily cost of providing the Common Fare diet is $5.00, while the daily cost of a regular diet is $1.69. Wood Aff. at ¶ 3-4.

The Common Fare diet is administered under IOP 611, which is similar, but not identical to, IOP 850 – the operating procedure governing Buckingham's kosher diet. Cei Aff. at ¶ 9. The Central Classification Services ("CCS") and Mr. Cei jointly approve and monitor requests for the Common Fare diet. Id. at ¶ 1. In order to determine whether a request for Common Fare is warranted, Powhatan provides an initial hearing with the ICA, at which an inmate may present his religious need for the diet. Id. at ¶ 8, Enclosure B. The inmate will also fill out the Common Fare Diet Checklist, which allows the inmate to state his religious need in writing. Id., Enclosure D. The decision is then reviewed by CCS for final approval. Id. at ¶ 9. IOP 611 provides that violations of the Common Fare diet, such as failure to pick up half of the meals over a week, "may" result in a 60 day suspension for the first offense, 90 days for the second, and permanent removal for the third. Id., Enclosure E. Like IOP 850, an inmate may not reapply to Common Fare after being permanently removed from the diet. Id. at ¶ 9.

In September of 2004, Plaintiff applied for the Common Fare diet and filled out the Common Fare Diet Checklist, stating that he adheres to the Jewish faith and that his medical condition precludes him from participating in Jewish services. Id., Enclosure D. His request was initially granted by the ICA at his hearing, pending review by the CCS. Id. at ¶ 6, Enclosure D.

However, upon final review by CCS Security Manager, Duncan Mills ("Mr. Mills"), the request was denied because Plaintiff had been permanently removed from the kosher diet in 1997, and once removed, he could not reapply for a kosher diet because his prior removal demonstrates a lack of a sincerely held belief. Mills Aff. At ¶ 3; Cei Aff. at ¶ 10. Before making the decision, Mr. Mills also ascertained that Plaintiff did not participate in any Jewish religious holidays, services, or programs due to his claim that he suffered from health problems that precluded his participation. Mills Aff. at ¶ 4; Cei Aff. at ¶ 9-10, Enclosure D. Plaintiff grieved the denial and, on January 25, 2005, it was upheld by Gary Bass ("Mr. Bass"), Chief of Operations for Offender Management Services. Pl.'s Mem., Ex. B.

Plaintiff filled out a Complaint Form, which was conditionally filed by the Court on February 5, 2005. (Doc. 1.) On March 21, 2005, Plaintiff paid the full filing fee of $250.00 and demonstrated that he exhausted his administrative remedies as required. (Doc. 3.) Accordingly, Plaintiff's Compliant was ordered to be filed on March 28, 2005. Id. Defendants filed their answer on May 27, 2005. (Doc. 8.) On April 6, 2005, Plaintiff filed a motion to include reimbursement for commissary expenses as part of his damages. On June 24, 2005, the Court denied the motion because Plaintiff already included a request for such reimbursement in his original Complaint. (Doc. 11.)

On July 6, 2005, Defendants filed a Motion for Summary Judgement, Defendants' Memorandum in Support of Motion for Summary Judgment [hereinafter "Def.'s Mem."], and four accompanying affidavits. (Docs. 13-18.) Also on July 6, 2005, Plaintiff filed a Motion for Summary Judgement. (Doc. 19.) In accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Plaintiff was given an opportunity to respond to Defendants' Motion for Summary Judgment with any material that he wished to offer in rebuttal. (Doc. 13.) The Court also instructed Plaintiff that failure to submit any materials could result in an adverse judgment based

on Defendants' Motion and accompanying affidavits. Id. On July 12, 2005, Plaintiff moved for an Extension of Time to Respond to Defendant's Motion. (Doc. 33.) The Court granted an extension, setting Plaintiff's response due date for August 29, 2005. (Doc. 25.) On July 26, 2005, Plaintiff filed an Affidavit in Opposition to Defendants' Motion for Summary Judgment, signed under penalty of perjury, [hereinafter "Pl.'s Aff."], and his response to Defendants' Motion, styled as "Memorandum in Defense of Defendants' Motion for Summary Judgment" [hereinafter "Pl.'s Mem."].³ (Docs. 23-24.) Plaintiff certifies that he mailed a copy of his responses to counsel on July 24, 2005. Accordingly, Defendants' and Plaintiff's Motions for Summary Judgment are now ripe for determination.

## II. STANDARD OF REVIEW

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986); Terry's Floor Fashions v. Burlington Indus., 763 F.2d 604, 610 (4th Cir. 1985). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. Celotex Corp., 477 U.S. at 322-24. Such facts must be presented in the form of exhibits and sworn affidavits. FED. R. CIV. P. 56(c). The facts and inferences must be viewed in the light most favorable to the

---

[3]Along with these filings, Plaintiff also sent a letter, requesting that the letter be filed in this action, which expresses other grievances about Plaintiff's prison conditions and claims that he is the subject of retaliation by being forced to live in a smoking dorm, in violation of the "ADA, the VA. Clean Air Act, and [his] Eighth Amendment rights." See Letter, dated On July 26, 2005. (Doc. 22.) The purpose of this letter is not clear; however, to the extent that Plaintiff wishes these additional grievances to be considered in this action, these additional claims are not properly before the Court and will not be considered in the instant action. Plaintiff is advised that he should file a separate Complaint and demonstrate that he has exhausted his administrative remedies as to these additional grievances.

nonmoving party. Nguyen v. CNA Corp., 44 F.3d 234, 237 (4th Cir. 1995). Failure by the non-moving party to rebut the moving party's motion with such evidence will result in summary judgment when appropriate. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. These specific facts must be such that a rational trier of fact could base a finding for the nonmovant upon them. "The mere existence of a scintilla of evidence . . . will be insufficient." Anderson, 477 U.S. at 252.

### III. GOOD FAITH QUALIFIED IMMUNITY

Plaintiff has sued Defendants in their individual capacities for both monetary and injunctive relief. Defendants argue that they are entitled to summary judgment on the issue of monetary damages under the defense of qualified, or "good faith," immunity. In general, state officials performing discretionary functions are shielded from liability for monetary damages if they can prove that their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The United States Court of Appeals for the Fourth Circuit determined that where the record does not create a genuine issue regarding Defendants' conduct, summary judgment is "a particularly appropriate procedure for determining an official's entitlement to qualified immunity." Torchinsky v. Siwinski, 942 F.2d 257, 261 (4th Cir. 1991) (citing Harlow, 457 U.S. at 816-17)); see also Turner v. Dammon, 848 F.2d 440, 443 (4th Cir. 1998). As none of the material facts regarding Defendants' actions are in issue, the Court will evaluate Defendants' claim to good faith qualified immunity.

A district court's evaluation of a claim of qualified immunity involves a three-step analysis. The first step is also a threshold determination: "whether plaintiff's allegations, if true,

establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, 736 (2002); see also Saucier v. Katz, 533 U.S.194 (2001). The second step is "to inquire whether at the time of the alleged violation [the right] was clearly established, then [the third step is] to further inquire whether a reasonable person in the official's position would have known that his conduct would violate that right." Collinson v. Gott, 895 F.2d 994, 998 (4th Cir. 1990) (Phillips, J., concurring). The Court will first evaluate whether Plaintiff has alleged a threshold constitutional or statutory right that has been violated.

**A. Constitutional or Statutory Violation**

Plaintiff claims a statutory violation under RLUIPA and a constitutional violation under the Free Exercise Clause of the First Amendment. Although inmates lose some constitutional protections upon being incarcerated, they retain the right to freely worship while in prison. O'Lone v. Shabazz, 482 U.S. 342, 348 (1987); Bell v. Wolfish, 441 U.S. 520, 545 (1979).

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. In order to establish a right under the Free Exercise Clause, Plaintiff must make two threshold showings. First, Plaintiff must show that he sincerely holds his religious beliefs; second, Plaintiff must show that his claims are rooted in that religious belief and not in "purely secular" concerns. Wisconsin v. Yoder, 406 U.S. 205, 215-16 (1972); see also Dehart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000) (en banc) (court must determine as a threshold matter whether an inmate's belief is "sincerely held" and "religious in nature"); Mitchell v. Angelone, 82 F. Supp. 2d 485, 490 (E.D. Va. 1999).

In most respects, evaluating a statutory violation under RLUIPA involves the same threshold issues invoked by a Free Exercise claim. RLUIPA prohibits a prison institution from "impose[ing] a substantial burden on the religious exercise of a person residing in or confined to

an institution . . ." unless the prison can show that "imposition of the burden . . . (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest." 42 U.S.C. § 2000cc-1(a). RLUIPA defines religious exercise as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7)(A). As under the First Amendment, prison officials may not question the truth of an inmates belief; however, an inmate must demonstrate that the belief is sincerely held in order to establish a protected right under RLUIPA. See Cutter v. Wilkinson, 125 S. Ct. 2113, 2124, n.13 (2005). Under both the First Amendment and RLUIPA, Plaintiff must show that his right to free exercise of religion has been "substantially burdened." Hernandez v. Comm'r, 490 U.S. 680, 699 (1989); §2000cc-1(a).

In this case, Plaintiff asserts under oath that he possesses a sincerely held belief in the Jewish faith and that his belief requires a kosher diet. Pl.'s Aff. at ¶ 2-3. For purposes of summary judgment, the Court assumes the truth of Plaintiff's assertion. It is undisputed that Plaintiff's request to be placed on the kosher Common Fare diet was denied. Construing these facts in the light most favorable to Plaintiff for purposes of Defendants' qualified immunity defense, the Court finds that they are sufficient to show that Defendants' determination that Plaintiff was not entitled to the kosher diet imposed a substantial burden upon his religious freedom. Thus, the Court must consider whether a reasonable officer in the Defendants' position would have known that denying Plaintiff's request for the Common Fare diet violated clearly established law under either RLUIPA or the Free Exercise Clause of the First Amendment. The Court will first evaluate Defendants' conduct under RLUIPA as it imposes the stricter standard of review.

**B. Violation of Clearly Established Law Under RLUIPA**

In determining whether Plaintiff's rights under RLUIPA were "clearly established" when

Defendants acted, the unlawfulness of Defendants' conduct must have been addressed by the United States Supreme Court, the Fourth Circuit or the Virginia Supreme Court. Wilson v. Layne, 141 F.3d 111, 114 (4th Cir. 1998). The "proper focus for courts is not upon the right at its most general or abstract level, but upon its application to the particular conduct being challenged." Collinson, 895 F.2d at 998. Therefore, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violated that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); see also Swanson v Powers, 937 F.2d 965, 968 (4th Cir. 1991), cert. denied, 112 S. Ct. 871 (1992). The heart of Plaintiff's claim is that Defendants erred in determining that Plaintiff did not possess a sincerely held belief. Defendants argue that requiring a sincerely held belief as a predicate for a special dietary accommodation serves a compelling state interest and that IOP 611, and their judgment in applying it, serves the least restrictive means of carrying out that interest and is entitled to judicial deference. See Def.'s Mem. at 10-13.

    1. Compelling State Interest

No relevant court has explicitly held that requiring an inmate to demonstrate a sincerely held belief as a predicate to a religious dietary accommodation constitutes a compelling state interest. Defendants contend that the prison's interest in maintaining order and discipline and in preserving costs and limited resources constitutes a compelling governmental interest, which justifies inquiring into the sincerity of an inmate's beliefs. See Def.'s Mem. at 10. Courts have found that prison officials have a compelling interest in maintaining institutional discipline and order when faced with questions of inmate religious liberty. Bell v. Wolfish, 441 U.S. 520, 546-47 (1979); Mack v. O'Leary, 80 F.3d 1175, 1180 (7th Cir. 1996); Jenkins v. Angelone, 948 F. Supp. 543, 548 (E.D. Va. 1996) (prisons have a compelling interest in preserving the health of inmates, maintaining security, managing budgetary constraints, and deflecting administrative

difficulties) (citing Ross v. Blackledge, 477 F.2d 616, 618 (4th Cir. 1973)).

In the context of religious dietary requests, prison officials must regularly assess the sincerity of an inmates's religious beliefs to prevent prisoners from bringing false claims under the guise of religion. See Gartrell v. Ashcroft, 191 F. Supp. 2d 23, 35 (D.D.C. 2002); Ochs v. Thalacker, 90 F.3d 293, 296 (8th Cir. 1996); Reed v. Faulkner, 842 F.2d 960 (7th Cir. 1988). Recently, the Supreme Court held that even under RLUIPA's strict scrutiny standard, district courts are admonished to defer to prison officials' expertise in striking the appropriate balance between inmates' religious needs and the prisons' compelling interests and are authorized to take costs and limited resources into consideration.

> While the Act adopts a "compelling governmental interest" standard, . . . "context matters" in the application of that standard. See Grutter v. Bollinger, 539 U.S. 306, 327 (2003). Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions. See, e.g., 139 Cong. Rec. 26190 (1993) (remarks of Senator Hatch). They anticipated that courts would apply the Act's standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Joint Statement S7775 (quoting S. Rep. No. 103-111, p. 10 (1993)).

Cutter v. Wilkinson, 125 S. Ct. 2113, 2123 (2005). Thus, while district courts are "not required to blindly accept any policy justification offered by state officials" their analysis should reflect the requisite deference to the expertise and experience of prison officials. Hoevenaar v. Lazaroff, 422 F.3d 366, 371 (6th Cir. 2005).

In this case, the disparity between the cost of the Common Fare diet and the regular prison diet justifies a heightened concern over the proliferation of frivolous or secular requests as necessary to maintain order and preserve limited prison resources. Thus, the Court finds that Defendants' belief that they have a compelling governmental interest in restricting the Common

Fare diet to only those that demonstrate a sincerely held belief is not unreasonable.  Moreover, the Supreme Court in <u>Cutter</u> also reaffirmed that in managing prisons under RLUIPA, "prison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic." 125 S. Ct. at 2124 n.13.  Thus, predicating the Common Fare diet upon a showing of a sincerely held belief is consistent with clearly established law.

  <u>2. Least Restrictive Means</u>

  The Court now turns to the lawfulness of Defendants' actions under RLUIPA's least restrictive means test.  The Court first notes that assessing the sincerity of an inmate's belief is a difficult task for courts as well as prison officials, often involving veiled motivations and amorphous or faulty perceptions.  <u>See</u> <u>e.g.</u>, <u>Patrick v. Le Fevre</u>, 745 F.2d 153, 157 (2d Cir. 1984).  Thus, it is not surprising that no relevant court has outlined the appropriate procedure that prison officials must use to determine if an inmate's religious beliefs are sincere, under either RLUIPA or the First Amendment.  In absence of a clearly established procedure, prison officials must formulate an institutional procedure to differentiate between valid and false requests and make case-by-case determinations in furtherance of that procedure.  In such circumstances, courts should not substitute their judgment for the judgement of prison officials given the officials' expertise in evaluating such requests.  <u>Cutter</u>, 125 S. Ct. at 2123; <u>Hoevenaar</u>, 422 F.3d at 370 (district court improperly substituted its judgment for that of prison officials under the guise of being the least restrictive means where the district court determined that certain inmates possessed a sincerely held belief and did not pose a significant safety risk); <u>see</u> <u>also</u> <u>Murphy v. Mo. Dep't of Corr.</u>, 372 F.3d 979, 987-88 (8th Cir. 2004), <u>cert</u>. <u>denied</u>, 543 U.S. 991 (2004).

  On the other hand, prison officials' determinations will not satisfy the strict requirements of RLUIPA to the extent that they are "inadequately formulated prison regulations and policies grounded on mere speculation, exaggerated fears, or post-hoc rationalizations."  Joint Statement

11

S7775 (quoting S. Rep. No. 103-111, p. 10 (1993)). The Court notes that in evaluating the merits of Defendants' qualified immunity defense, it is not before the Court to decide whether Defendants came to the correct conclusion. Rather, the Court must solely determine whether Defendants' decision to deny Plaintiff's request for the Common Fare diet violated clearly established law, which would be apparent to a reasonable officer. According to the Fourth Circuit in Collinson, this determination

> must be made on the basis of information actually possessed at the time by the official, or then readily available to him . . . . The toleration accorded by the objective test to "good faith" mistakes of judgement traceable to unsettled law, or faulty information, or contextual exigencies, is deliberately designed to give protection "to all but the plainly incompetent of those who knowingly violate the law" in order to avoid undue inhibition of public officials in the discharge of their discretionary duties.

Collinson, 895 F.2d at 998 (Phillips, J., concurring) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986) (citations omitted)). In evaluating the lawfulness of Defendants' actions, the Court will first review the operating procedure upon which they based their determination, then the Court will address Defendants' determination that Plaintiff was ineligible for the Common Fare diet.

Plaintiff's request for the Common Fare diet is governed by IOP 611, which provides inmates with an initial hearing to explain the religious motivation for the request, and also provides an opportunity to state these reasons in writing on the Common Fare Diet Checklist. Def.'s Mem, Enclosure D, E. The Checklist questions are gauged to assess the sincerity of the inmates religion based upon a variety of factors, including how long the inmate has practiced the religion, whether the inmate's name appears on the pass list for religious programs, whether the inmate has previously requested a religious diet, whether the inmate takes any special religious classes, whether the inmate has been observed eating items that my be contradictory to the

claimed diet, and whether the inmate participates regularly in the services and holidays provided for the religion.  Id., Enclosure D.  Removal from the diet is based upon violations that would be considered contrary to a sincerely held religious belief, such as failing to pick up half of the kosher meals and eating or purchasing non-kosher foods.  Id., Enclosure E.  In light of IOP 611's emphasis on providing inmates an opportunity to establish a sincerely held belief based on a variety of relevant factors, the Court finds that IOP 611 appears to have been adequately formulated to balance the prison's interests and inmates' religious rights.  Thus, Defendants' reliance upon IOP 611 in making their determination was not unlawful.

Likewise, Defendants' determination that Plaintiff was not eligible for the Common Fare diet, while perhaps errant, does not appear to have been speculative, exaggerated, or based upon post-hoc rationalizations.  At the time Defendants denied Plaintiff's request for Common Fare, Defendants had the following facts before them: 1) Defendant was previously removed from the kosher diet in 1997 for failure to pick up half his meals; and 2) Plaintiff did not attend any Jewish services at Powhatan.  Mills Aff. at ¶ 3; Cei Aff. at ¶ 9-10.  According to Defendants, having been permanently removed from the kosher diet precluded Plaintiff from reapplying under IOP 611 because the violation conclusively demonstrated a lack of a sincerely held belief.  Cei Aff. at ¶ 9-10.  Plaintiff's failure to attend any religious services further demonstrated a lack of a sincerely held belief.  Mills Aff. at ¶ 3.

While Plaintiff does not dispute these facts, Plaintiff contends that Defendants erred in interpreting these facts as demonstrative proof that he does not possess a sincerely held belief.[4]

---

[4]Plaintiff also claims that Defendants' decision was in violation of the prison's operating procedure, arguing that Defendants erred in precluding him from applying to the Common Fare diet based upon his previous removal because IOP 611 allows for three violations before being permanently removed from the plan.  Plaintiff's frustration or confusion with Defendants' administration of IOP 611 is understandable; however, his argument does not lead the Court to conclude that Defendants' decision was arbitrary or in violation of the Powhatan's operating procedures.

13

Plaintiff advises that the reason he does not attend Jewish services is because he suffers from cancer, which makes him "unable to sit, stand, or walk for any period of time." Pl.'s Aff. at ¶ 5. Plaintiff contends that this fact does not undermine the sincerity of his belief since "he can still pray, possess faith objects, [and] visit a spiritual leader. . . ." Pl.'s Mem. at 5. Defendants do not dispute that Plaintiff suffers from this illness. Nonetheless, Defendants are not persuaded that Plaintiff's illness reasonably precludes him from attending Jewish services. According to an affidavit submitted by Shanda Dawkins [hereinafter "Dawkins Aff."], the treatment program supervisor responsible for managing religious programs, if Plaintiff "were sincere in his desire to practice his religion, there are ways to attend religious services in spite of his health issue, perhaps by occasionally moving around during the service if he needed to do so." Dawkins' Aff. at ¶ 6; see also Mills' Aff. at ¶ 4 ("If [Plaintiff] is unable to sit or stand in any one position for any length of time, he can sit in the back of the room and move about during the service as needed.").

Although Defendants' perception of the foregoing facts may have been in error, the Court cannot conclude that Defendants' determination that Plaintiff did not possess a sincerely held belief was speculative, exaggerated, or unsupported by the facts that were known to them at the time. It appears to the Court that a reasonable officer in Defendants' position could have come to

---

Plaintiff was removed from the kosher diet in 1997, which was governed by IOP 850, not IOP 611. IOP 850 made no reference to allowing three violations before being removed from the plan, but provided that Plaintiff could be removed for any violation of IOP 850. Therefore, his original removal for failing to pick up fifty percent of his meals did not violate IOP 850. Neither did Defendants' decision violate IOP 611. Although Plaintiff was initially approved for the Common Fare diet at his initial hearing, his final review had not yet been conducted. Thus, Mr. Mills' decision was not whether to remove Plaintiff from the plan under IOP 611's three violation procedure, but whether he should be placed on the plan in light of the fact that he had already been permanently removed from a kosher plan in 1997. Therefore, the Court concludes that Defendants' determination did not violate the provisions of IOP 850 or 611, as suggested by Plaintiff.

the conclusion that Plaintiff lacked a sincerely held belief. Moreover, Defendants retained discretion to guard against the proliferation of frivolous or secular requests and their judgment is entitled to judicial deference, where no alternative method for making this necessary determination has been clearly established as the least restrictive means. Thus, Defendants' determination did not violate clearly established law, which would be apparent to a reasonable officer. Accordingly, Defendants' are entitled to good faith qualified immunity as to all claims for monetary relief arising from a RLUIPA violation.

**C. Violation of Clearly Established Law Under the Free Exercise Clause**

Under the Free Exercise Clause of the First Amendment, where a prisoner establishes a threshold constitutional right that has been infringed, the validity of the procedure or officials' determination that infringes that right is valid if "it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987); see also O'Lone, 482 U.S. at 349. In rejecting a strict scrutiny standard, the Supreme Court determined that prison officials, rather than courts, should make difficult judgments necessary to maintain institutional order and discipline and that courts should defer to prison officials' reasonable exercise of discretion since courts do not have the expertise to administer state prisons. See Jenkins v. Angelone, 948 F. Supp. 543, 546 (E.D. Va. 1996) (citing Turner, 482 U.S. at 89, and O'Lone, 482 U.S. at 348).

Because the Court has already determined that Defendants' conduct did not violate clearly established law under strict scrutiny review, their conduct did not violate the reasonableness standard applicable to Plaintiff's Free Exercise claim, which accords a greater degree of deference to their determination. Accordingly, the Court concludes that Defendants are entitled to good faith qualified immunity for monetary damages arising from a violation of the Free Exercise Clause of the First Amendment.

## IV. INJUNCTIVE RELIEF

Plaintiff requests injunctive relief requiring Defendants to approve his request for the Common fare diet. Neither party has demonstrated that there is no genuine issue of material fact with respect to injunctive relief. There is evidence in the record from which a rational factfinder could conclude that Plaintiff possess a sincerely held belief that requires a kosher diet. Plaintiff submitted numerous affidavits from other inmates stating that he 1) gives away his regular food trays; 2) makes his dietary purchases from the commissary; and 3) doesn't attend religious services due to his health. See Pl.'s Mem., Ex. E. However, there is also countervailing evidence from which a factfinder could conclude that Plaintiff did not possess a sincerely held belief. For example, before the Court is evidence that Plaintiff did not attend religious services at any time, that he was permanently removed from the kosher diet plan in 1997, and he apparently did not request to be placed on another kosher diet until 2004. Nevertheless, the record indicates that sometime during the pendency of this matter, Defendants offered to place Plaintiff on the Common Fare diet. See Pl.'s Mem. At 6. Therefore, it is not clear to the Court whether the issue of injunctive relief should go forward.

## V. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment on the issue of monetary damages is **GRANTED** because Defendants have established a defense of good faith qualified immunity. Accordingly, Plaintiff's Motion for Summary Judgement on the issue of monetary damages is **DENIED**. Defendants' and Plaintiff's Motions for Summary Judgment on the issue of injunctive relief are **DENIED**. Defendants are **ORDERED** to advise the Court within thirty (30) days of the entry of this Opinion and Order, whether Defendants have placed Plaintiff on the Common Fare diet.

Plaintiff is advised that he may appeal from this Opinion and Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.  Said written notice must be received by the Clerk within thirty (30) days from the date of this order.  If Plaintiff wishes to proceed <u>in forma pauperis</u> on appeal, the application to proceed <u>in forma pauperis</u> is to be submitted to the Clerk, United States Court of Appeals, Fourth Circuit, 1100 E. Main Street, Richmond, Virginia 23219.

The Clerk is **DIRECTED** to send a copy of this Opinion and Final Order to Plaintiff and counsel for Defendants.

IT IS SO **ORDERED**.

                                                /s/
                             *HONORABLE HENRY COKE MORGAN, JR.*
                             SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
March 21, 2006